427 So.2d 1103 (1983)
Clifford JOHNSON, Appellant,
v.
The STATE of Florida, Appellee.
No. 81-1770.
District Court of Appeal of Florida, Third District.
March 15, 1983.
*1104 Bennett H. Brummer, Public Defender, and Jerrell A. Breslin, Sp. Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen., and Diane Leeds, Asst. Atty. Gen., for appellee.
Before SCHWARTZ, C.J., and HENDRY and BASKIN, JJ.
PER CURIAM.
Appellant seeks reversal of his convictions of robbery with a weapon other than a firearm or other deadly weapon, and kidnapping. The sentences imposed were thirty years imprisonment for robbery and life imprisonment for kidnapping.
The sole grounds relied on for reversal are that the appellant was denied the right to discharge his court-appointed counsel, and that he was denied the right to conduct his own defense without the assistance of his court-appointed counsel, and that no inquiry was made by the trial judge into appellant's educational background and to determine why he wished to discharge his court-appointed counsel.
It appears from the record that immediately prior to the commencement of appellant's trial he made a motion to dismiss his court-appointed counsel and to require counsel to turn over all relevant files and papers to him "so that defendant can prepare a defense." He was asked by the court to explain why he wished to discharge his court-appointed counsel. He replied:
"The motion itself is explanatory. When the State brings a witness in on fingerprints, from the understanding I have, there was supposed to be some detective that went and took fingerprints, and in the field, detectives don't take fingerprints. All this seems like is a personal vendetta. If the State was asking for a continuance to give them time to do whatever they were going to do, you would okay it, and I'm trying to set up something for my defense and you are denying me that opportunity and I'm facing a life sentence."
The court denied the motion to discharge counsel and ordered the appellant to go to trial. During the selection of the jury, the appellant was asked by the court whether he wanted to participate and to sit at the counsel table with his appointed counsel. The following colloquy ensued:
THE DEFENDANT: "Well, I know what my rights are and I'm not giving up my rights. Like I said yesterday, I'm just not going to Court with Mr. [Melvin] Black period, and if that is what it is  "
* * * * * *
THE COURT: "If you wish to say anything I will hear you now. Do you want to tell me why you are asking that Mr. Black be discharged?"
THE DEFENDANT: "Yes."
THE COURT: "Let me hear it."
THE DEFENDANT: "Day before yesterday we were  he knows my witnesses, I don't have a defense."
THE COURT: "Do you understand, Mr. Johnson, that  "

*1105 THE DEFENDANT: "I understand."
THE COURT: "Mr. Johnson, did you understand my ruling on that motion? Do you understand that I, in effect, granted your request for a continuance and the State is not proceeding in that case against you. The Court is allowing you time to contact that witness. Do you understand that?"
THE DEFENDANT: "I understand."
THE COURT: "What other reason then?"
THE DEFENDANT: "I understand, still you reached down in the bucket and said we are going to have this trial here. We were ready for one trial and the trial we were ready for, then you come out of the bucket with another trial."
THE COURT: "Is this the reason you think Mr. Black is not  "
THE DEFENDANT: "I don't think he has been doing anything in my best interest."
The court again refused to discharge and substitute counsel. Subsequently, the court asked appellant if he wished to testify in his own behalf. He replied that he would not participate, and further stated that he would not consult with counsel, nor attend his trial. Later in the proceedings, the appellant was asked by his appointed counsel to tell the court why he wanted to fire counsel and whether he intended to represent himself, or whether he wanted another lawyer appointed to represent him. The appellant stated: "I need another lawyer." After the court inquired whether appellant wanted to remain in the courtroom and whether he wanted to represent himself and the appellant answered that he did not, the trial proceeded to verdict with Mr. Black acting as court-appointed counsel, but without appellant's assistance or cooperation.
We find no reversible error in the trial court's denial of the appellant's motion. Although the motion indicated that appellant wished to be provided with the files and papers in the possession of his appointed counsel so that he "could prepare a defense," the only clear indication of appellant's wishes reflected in the transcripts of the pre-trial and trial proceedings was that he was dissatisfied with appointed counsel and with the proceedings in general, and that he desired to have a different attorney appointed to represent him. An indigent defendant, however, does not have a right to counsel of his own choosing, but is entitled only to court-appointed counsel in the absence of some specific reasons based on facts pointing to the disqualification of court-appointed counsel. Wiltz v. State, 346 So.2d 1221 (Fla. 3d DCA 1977), cert. denied, 358 So.2d 135 (Fla. 1978). Here, the trial judge made a finding that there was no conflict and that Mr. Black "is doing a fine job at representing you," and that "[y]ou are ably represented by a very good defense attorney." There was no good and sufficient reason shown why counsel should have been discharged and substituted.
Appellant's contention that the trial court erred in not allowing him to represent himself is without merit. Nowhere does it appear that appellant made a clear and unequivocal declaration to the trial court that he wanted to represent himself. Cappetta v. State, 204 So.2d 913 (Fla. 4th DCA 1967), rev'd on other grounds, 216 So.2d 749 (Fla. 1968); cf. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (defendant unconstitutionally deprived of Sixth Amendment right to self-representation where he was forced to accept appointed counsel, despite having clearly and unequivocally informed court before trial that he wanted to represent himself and did not want appointed counsel, and where record showed waiver of right to counsel and decision to act as own counsel knowingly and intelligently made.) Here, the appellant wanted only to substitute counsel. As was said in Wilder v. State, 156 So.2d 395, 397 (Fla. 1st DCA 1963):
"We do not understand it to be the law of this state or of the United States, constitutional or otherwise, that one entitled to be furnished counsel at the expense of the state or its component parts may willy-nilly compel the courts to discharge *1106 competent and conscientious counsel duly appointed to provide him with legal services, or that he is entitled to the services of more than one attorney in the premises, or that he has the right to designate the attorney who shall be so employed to represent him."
Further, since the appellant never clearly expressed a desire to exercise his Sixth Amendment right to self-representation, also guaranteed by Art. I, § 16, Fla. Const., the trial court was not required to make inquiry into appellant's education and other factors relevant to determining the validity of a waiver of the right to counsel.
No reversible error having been demonstrated, the judgments and sentences are
AFFIRMED.